*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DELANA JACKSON, as Attorney in Fact for
DANIELLE JACKSON, and DANIELLE
JACKSON,[1]

      Plaintiffs-Appellants,

v

CITY OF ALLEN PARK and OFFICER S.
HARVEY,

      Defendants-Appellees,

and

OFFICER FRANCO[2] and HENRY JACKSON,
JR.,

      Defendants.

UNPUBLISHED
October 3, 2019

No. 343862
Wayne Circuit Court
LC No. 16-004975-NI

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

      Plaintiff appeals as of right the trial court's order granting summary disposition to defendants, City of Allen Park, and Allen Park Police Officers Shaun Harvey and Christopher Franco.[3] We affirm.

---

[1] Delana Jackson is Danielle Jackson's mother and has durable power of attorney for Danielle. Because Delana did not bring any claim on her own behalf, we will refer to and treat Danielle as "plaintiff."

[2] Officer S. Harvey's full name is Officer Shaun Harvey and Officer Franco's full name is Officer Christopher Franco.

I. FACTUAL BACKGROUND

This action arises from an April 20, 2014, car accident on westbound I-94 in Allen Park, Michigan. At approximately 12:20 a.m., Christopher Herridge and John Sullivan were in a car accident on eastbound I-94 (the first accident). Herridge's vehicle stopped on the grassy median between eastbound I-94 and westbound I-94, approximately 5 feet away from the I-94 westbound roadway. Sullivan's vehicle stopped on a grassy area off the shoulder of eastbound I-94. Herridge called the police and remained inside his vehicle until the police arrived.

Allen Park Police Lieutenant Christopher Egan was the first police officer to arrive on scene. Lieutenant Egan stopped his police vehicle on the shoulder of westbound I-94 and walked over to Herridge's vehicle to determine whether Herridge needed medical attention (he did not). While Lieutenant Egan spoke with Herridge, Allen Park Police Officers Segrest and Curtis stopped their police vehicle behind Lieutenant Egan's police vehicle on the shoulder of westbound I-94. Officers Harvey and Franco arrived soon after. Officer Harvey parked his vehicle in the farthest left travel lane of westbound I-94, next to Lieutenant Egan's vehicle, in order "to provide traffic control until [the] Michigan State Police" or the Taylor police arrived. Officer Harvey activated the emergency lights, left the vehicle running, and exited the vehicle with Officer Franco. Shortly after Officers Harvey and Franco arrived, Lieutenant Egan drove his police vehicle to eastbound I-94, stopping on the shoulder, so that he could address the occupants in Sullivan's vehicle. Officers Curtis and Segrest eventually followed Lieutenant Egan to eastbound I-94. Officers Harvey and Franco approached Herridge's vehicle in the median and remained there, making small talk with Herridge, for over 20 minutes.

Around 1:00 a.m., Henry Jackson, Jr. was driving himself, his brother, two friends, and plaintiff home after a night out in Detroit, Michigan. According to Jackson, he was driving on westbound I-94 in the left lane or second to left lane behind another vehicle when he noticed emergency lights on the other side of the highway and a vehicle in the median. Henry initially thought that Officer Harvey's vehicle was stopped on the highway shoulder rather than the left lane. Before Henry realized that it was in the left travel lane, he crashed into rear end of Officer Harvey's car (the second accident). Henry testified that he was unable to see the car's emergency lights because of the vehicle in front of him and that he did not have enough time to stop before crashing into the car. Plaintiff was thereafter transported to the hospital with critical injuries.

Plaintiff sued Allen Park and Officers Franco and Harvey for negligence and gross negligence. Defendants moved for summary disposition, asserting that plaintiff's claims were

---

[3] The other defendant, Henry Jackson, Jr., was dismissed from this litigation on April 19, 2018, after the parties stipulated to his dismissal. Additionally, plaintiff and defendants agreed below that summary disposition with respect to Officer Franco was appropriate. Plaintiff only appeals the trial court's order granting defendants' motion for summary disposition with respect to Allen Park and Officer Harvey.

barred by governmental immunity. In response, plaintiff argued that defendants were not immune from liability because the motor-vehicle exception, MCL 691.1405, was applicable, and because Officers Franco and Harvey were grossly negligence pursuant to MCL 691.1407(2). The trial court disagreed and granted defendants summary disposition.

## II. THE MOTOR-VEHICLE EXCEPTION

Plaintiff argues that the trial court erred when it granted defendants' motion for summary disposition because there is a genuine issue of material fact as to whether the motor-vehicle exception to governmental immunity applies. We disagree.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Maskery v Board of Regents of Univ of Michigan*, 468 Mich 609, 613; 664 NW2d 165 (2003). Whether governmental immunity and the statutory exceptions to immunity are applicable are reviewed de novo. *Briggs v Oakland Co*, 276 Mich App 369, 371; 742 NW2d 136 (2007). The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) and (10), but did not clarify whether summary disposition, with respect to the motor-vehicle exception specifically, was appropriate under MCR 2.116(C)(7) or (10).

Summary disposition under MCR 2.116(C)(7) is appropriate if a claim "is barred by immunity granted by law." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). When reviewing a motion under MCR 2.116(C)(7), this Court "must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). This Court must also consider any affidavits, depositions, admissions, or other documentary evidence to determine whether there is a genuine issue of material fact. *Id*. at 429. If there are no facts in dispute, and "if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id*. However, dismissal is inappropriate if a question of fact exists to the extent that factual development may provide a basis for recovery. *Id*.

A motion for summary disposition under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties fails to establish a genuine issue of material fact, and the moving party is entitled to judgement or partial judgment as a matter of law. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). A genuine issue of material fact exists if, after viewing the record in a light most favorable to the nonmoving party, reasonable minds could differ on an issue. *West v Gen Motor Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court reviews only the evidence that was presented at the time the motion was decided, which, under MCR 2.116(C)(10), includes affidavits, pleadings, depositions, and other evidence that the parties submitted. *Innovation Ventures*, 499 Mich at 507.

Plaintiff argues that the trial court erred when it granted defendants' motion for summary disposition because there is a genuine issue of material fact as to whether Officer Harvey's car was in "operation" at the time of the second accident. We disagree.

The Governmental Tort Liability Act (GTLA) broadly grants governmental agencies and governmental officers and employees immunity from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1) and (2)(b). However, a governmental agency can be held liable if a claim falls within one of the enumerated statutory exceptions. *Moraccini v Sterling Heights*, 296 Mich App 387, 392; 822 NW2d 799 (2012). One of these exceptions is the motor-vehicle exception, MCL 691.1405, which provides, in relevant part:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . .

This issue hinges on the proper interpretation of the motor-vehicle exception and, specifically, the proper meaning of "operation." Plaintiff contends that a police vehicle is in "operation" when it is performing a function for which it was designed—in this case, diverting oncoming traffic away from the median. In contrast, defendants argue that a police vehicle is only in "operation" when it is being used for an activity that is directly associated with the driving of a motor vehicle.

Although the Legislature did not define "operation" for the purposes of MCL 691.1405, this Court and the Michigan Supreme Court have interpreted its meaning. In *Chandler v Co of Muskegon*, 467 Mich 315, 320-321; 652 NW2d 224 (2002), the Michigan Supreme Court declared that, in the context of MCL 691.1405, " 'operation of a motor vehicle' means that the motor vehicle is being operated *as* a motor vehicle" and only "encompasses activities that are directly associated with the driving of a motor vehicle." *Chandler* involved a city bus that was parked in a maintenance garage for purposes of cleaning, with the engine off, and a plaintiff who was injured while trying to help the bus driver escape from the bus doors that had closed on his neck. *Id*. at 316. The Supreme Court held that the bus was not in operation at the time of the plaintiff's injury because the city bus was "parked in a maintenance facility for the purpose of maintenance and was not at the time being operated *as* a motor vehicle." *Id*. at 322.

In *Poppen v Tovey*, 256 Mich App 351, 352; 664 NW2d 269 (2003), a city water truck was temporarily stopped in the curb lane of a two-lane road with its "four-way emergency flashers and overhead warning lights activated" so that a city employee could "inspect a city-owned and maintained fire hydrant." A motorist rear-ended the city water truck while it was temporarily stopped and sued for his injuries. *Id*. at 353. This Court relied on *Chandler* to determine that the city water truck was not in "operation" at the time of the accident because it had been stopped for approximately three to five minutes and for the purpose of allowing a city employee to inspect a public facility. *Id*. at 355-356. Once the city water truck stopped for this purpose, "its presence on the road was no longer 'directly associated with the driving' of that vehicle." *Id*. at 355-356, quoting *Chandler*, 467 Mich at 321. Accordingly, the motor-vehicle exception did not apply. *Poppen*, 256 Mich App at 355.

However, in *Strozier v Flint Community Sch*, 295 Mich App 82, 84; 811 NW2d 59 (2011), a passenger on a school bus was injured after the bus collided with a sanitation truck. The sanitation truck had been making "periodic, brief, temporary stops in the right lane" to allow

a city worker to collect garbage and dispose of it in the back of the truck. *Id*. At the time of the collision, the sanitation truck was temporarily stopped in the road. *Id*. at 88. The issue in *Strozier* was whether the term "operation" requires a motor vehicle "to have been moving at the time of the collision or whether a stationary vehicle may be operating within the meaning of the statute." *Id*. at 87. This Court held that *temporary* stops such as the ones performed by the sanitation truck can fall within the meaning of "operation," such that the motor-vehicle exception applied. *Id*. at 88 (emphasis added). There, we found that the sanitation truck was in "operation" because the sanitation truck could only perform its intended function if it could make periodic stops to collect garbage. *Id*. at 91.

In this case, Harvey's car was parked in the left travel lane of westbound I-94 for approximately 30 minutes while Officers Harvey and Franco spoke with Herridge in the median. This case is distinguishable from *Strozier* because the car was parked for approximately 30 minutes whereas the school bus in *Strozier* was making several temporary stops. *Strozier*, 295 Mich App at 87-88. Officer Harvey, as directed by Lieutenant Egan, used his car as a roadblock to divert oncoming traffic from the area where Herridge's car was stopped. Like the city water truck in *Poppen*, the car was parked in the left lane of westbound I-94 to allow a government employee to perform a governmental function, which in this case was to allow Officers Harvey's and Franco's response to the first accident. *Poppen*, 256 Mich App at 352. Once Officer Harvey parked his car to speak with Herridge, the car's presence on the road was no longer directly associated with driving—it was to serve as a roadblock. *Id*. at 355-356. The car was not being operated as a motor vehicle and was not involved in activity that was directed associated with driving because it was parked and unoccupied for an extended period of time. *Chandler*, 467 Mich at 320-321. Because Officer Harvey did not stop the car for the purpose of driving, the car was not being operated as a motor vehicle at the time of the second accident. *Poppen*, 256 Mich App at 355. Accordingly, the trial court properly determined that the motor-vehicle exception to governmental immunity was inapplicable.

Next, it is unnecessary to address plaintiff's argument regarding Officer Harvey's purported negligence with respect to the vehicle. Even if there is a question of fact as to whether Officer Harvey was negligent, the motor-vehicle exception is still inapplicable because the car was not in "operation" at the time of the second accident. The motor-vehicle exception to governmental immunity requires the plaintiff to establish that the government-owned vehicle was in "operation" when plaintiff sustained her injuries and that the governmental employee was negligent in the operation of that government-owned motor vehicle. MCL 691.1405. Thus, even if plaintiff could establish a question of fact regarding Officer Harvey's negligence, she still cannot overcome governmental immunity because she cannot satisfy the operational element of the motor-vehicle exception.

## III. GROSS NEGLIGENCE

Plaintiff also argues that the trial court erred when it granted defendants' motion for summary disposition because there is a genuine issue of material fact regarding Officer Harvey's gross negligence and whether that gross negligence was the proximate cause of her injuries. We disagree.

MCL 691.1407(2), provides:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). Gross negligence suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). Evidence of ordinary negligence is insufficient to establish a material question of fact regarding a government employee's gross negligence. *Wood v Detroit*, 323 Mich App 416, 423-424; 917 NW2d 709 (2018), citing *Chelsea Inv Group LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). The plaintiff must proffer evidence that the governmental employee's conduct was reckless as well as the proximate cause of the plaintiff's injuries. *Chelsea Inv Group LLC*, 288 Mich App at 265. While questions regarding whether a governmental employee's conduct amounted to gross negligence are generally issues of fact for the jury to decide, summary disposition may be granted if reasonable minds could not differ. *Briggs*, 276 Mich App at 374.

There is no dispute that Officer Harvey is a public employee that was acting within the scope of his authority while in the exercise or discharge of a governmental function. Officer Harvey was responding to the scene of the first accident. The only issue on appeal is whether Officer Harvey's conduct constituted gross negligence. The trial court concluded that it did not and we agree.

While Officer Harvey failed to use emergency flares, he took some precaution by activating the emergency lights on his patrol car. Officer Harvey initially parked the car in the left lane of westbound I-94 because two other police vehicles were already on the shoulder when Officers Harvey and Franco arrived on the scene. It is true that Officer Harvey did not move his vehicle out of the left lane after the other two police vehicles drove over to eastbound I-94 because he was talking to Herridge and using his car to divert oncoming traffic away from the area. However, a failure to take additional precautions, such as using emergency flares, is insufficient to find gross negligence. *Tarlea*, 263 Mich App at 90. Gross negligence exists when

an objective observer could reasonably conclude "that the actor simply did not care about the safety or welfare of" others. *Id.* In addition, while an expert's report and affidavit (such as that submitted by plaintiff) may create a genuine issue of material fact with respect to negligence, the facts of this case, as a matter of law, simply do not rise to the level of gross negligence. No objective observer could conclude, reasonably, that Officer Harvey acted with "reckless disregard." Accordingly, plaintiff fails to demonstrate that there is question of fact regarding Officer Harvey's gross negligence.

Because there is no question of fact that Officer Harvey's actions did not constitute gross negligence, it is unnecessary to address plaintiff's argument regarding proximate causation. See *Ray v Swager*, 501 Mich 52, 74; 903 NW2d 366 (2017) ("[B]efore an actor can be a proximate cause, there must be the prerequisite determination that the actor was negligent—that is, that the actor breached a duty.").

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto